UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RONNIE R. SHEETZ,<br><br>     Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>     Defendant. | Case No. 1:24-CV-235 JD |

**OPINION AND ORDER**

Plaintiff Ronnie Sheetz sought disability insurance benefits under Title XVI of the Social Security Act, alleging that she became disabled in March 2021.[1] Her claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Ms. Sheetz was not disabled. The Appeals Council reviewed the denial, finding that Ms. Sheetz was not disabled under § 1614(a)(3)(A) of the Social Security Act. (R. at 8.) Ms. Sheetz now seeks judicial review in this Court. For the reasons below, the Court will remand the case to the Social Security Administration for further proceedings.

**A. Standard of Review**

The Appeals Council's decision is considered the final decision of the Commissioner for purposes of judicial review. *See Arbogast v. Bowen*, 860 F.2d 1400, 1402–03 (7th Cir. 1988).

---

[1] Ms. Sheetz also applied for disability benefits under Title II but voluntarily dismissed that application while her case was pending before an Administrative Law Judge.

However, where, as here, the Appeals Council explicitly adopted the opinion of the ALJ, as modified, the Court reviews the decision of the ALJ.[2] *Id.*

This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ

---

[2] The Appeals Council modified the ALJ's decision only in relation to Ms. Sheetz's claim for Title II benefits, finding that the ALJ's decision failed to dismiss that claim.

must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B. Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity,

which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### C. Discussion

**(1)** *The ALJ's Decision*

Ms. Sheetz filed a Title XVI application for disability insurance benefits alleging disability beginning in March 2021. Her claim was denied initially and upon reconsideration, leading to a hearing before an ALJ on January 30, 2023.

At the hearing, Ms. Sheetz testified, among other things, that she experiences severe anxiety and PTSD, which limit her ability to drive and perform self-care, and that she often feels overwhelmed by daily tasks. (R. at 57, 60.) She reported having panic attacks and severe anxiety in social situations, which prevent her from attending her children's school activities. (R. at 58.) Ms. Sheetz stated that she was banned from a Dollar General store after an incident in which she lost her temper, and that she had a panic attack that prevented her from attending a job interview. She is on multiple medications for her mental health but finds them only marginally effective, and she experiences side effects such as suicidal ideation and difficulty sleeping. (R. at 58–59.)

4

She said she attends biweekly counseling sessions and sees a psychiatrist for medication management. (R. at 59–60.)

On March 17, 2023, the ALJ issued a decision finding that Ms. Sheetz was not disabled. (R. at 38.) In doing so, the ALJ employed the customary five-step analysis. At Step 2, the ALJ determined that Ms. Sheetz suffered from the following severe impairments: "degenerative disc disease (DDD) of the lumbar and cervical spine, lumbar spondylosis, obesity, headache, depression, anxiety, post-traumatic stress disorder (PTSD), and bipolar disorder." (R. at 24.)

At Step 4, the ALJ determined Ms. Sheetz's residual functional capacity ("RFC"),[3] finding that she can

> perform light work[4] . . . except that the claimant is further limited to the following: frequently climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; occasionally balancing, stooping, kneeling, crouching, or crawling; performing simple, routine tasks; making simple, work-related decisions; and occasionally interacting with supervisors, coworkers, or the public.

(R. at 30.)

The ALJ posed this RFC to the vocational expert ("VE") as part of a hypothetical question. (R. at 70–71.) The VE testified that there were jobs available in significant numbers in the national economy for such an individual: housekeeper, small products assembler, and paper sorter/counter. (R. at 71.) The VE further testified that if the hypothetical individual were to miss

---

[3] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

work, arrive late, or leave early twice per month, there would be no jobs available for such a person. (R. 72–73.) Additionally, to maintain employment, such an individual must remain on task at least 90% of the workday, not including regularly scheduled breaks. (R. at 74.)

In his decision, the ALJ found that Ms. Sheetz has moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.

The ALJ noted that Ms. Sheetz's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence. For example, despite reporting severe symptoms, Ms. Sheetz had many appointments without psychiatric complaints or exam deficits, and she was mostly progressing with therapy. (R. 31, 35.) The ALJ observed that Ms. Sheetz reported some improvement with medication and therapy. For example, in May 2021, she stated that her medication was "working fairly well," and she had several appointments where she denied having psychiatric symptoms and had unremarkable exams.(R. at 34, 35.)

**(2)** *Mental Functioning Limitations*

In her appeal, Ms. Sheetz argues that the ALJ committed two reversible errors. First, she contends that ALJ failed to build a logical bridge from the evidence that Ms. Sheetz is moderately limited in her ability to concentrate, persist, or to maintain pace, and adapt or managing herself to the conclusion that jobs exist in the national economy that she can perform. Second, Ms. Sheetz submits that the ALJ improperly evaluated her symptoms by not adequately considering the side effects of her medications and the persistence of her symptoms, which led to an RFC that does not reflect the severity of her impairments. The first argument warrants remand

for further consideration. As a result, the Court addresses that argument alone and declines to reach the second argument, leaving it to be resolved upon remand if necessary.

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

> Before formulating the RFC, at step two, the ALJ utilizes a special technique called the psychiatric review technique ("PRT") to determine the severity of any mental limitations. 20 C.F.R. § 404.1520a. Using the PRT, the ALJ assesses the claimant's function in four categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*. Although the ALJ's step two analysis is not an RFC finding, SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *4, if an ALJ finds mental impairments at step two, these should then be "reflected as limitations in the RFC finding." *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, . . . the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."); *Paar v. Astrue*, No. 09 C 5169, 2012 U.S. Dist. LEXIS 4948, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012) (finding ALJ erred in not including mild mental limitations he found at step two in his RFC analysis).

*Judy M. v. Kijakazi*, 658 F. Supp. 3d 596, 602 (N.D. Ill. 2023). After all, adequate concentration, persistence, and pace, and adapting and managing oneself are required for competitive employment:

> To do a work-related task, you must be able to understand and remember and apply information required by the task. Similarly, you must be able to concentrate and persist and maintain pace in order to complete the task, and adapt and manage yourself in the workplace. Limitation in any one of these parts (understand or remember or apply; concentrate or persist or maintain pace; adapt or manage oneself) may prevent you from completing a work-related task.

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(f)(i)

"Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and the hypothetical question." *Winsted*, 923

7

F.3d at 477 (emphasis in the original). "[W]e will not assume that the VE is apprised of such limitations unless she has independently reviewed the medical record." *Yurt*, 758 F.3d at 857.

Here, the record does not reflect that the VE reviewed Ms. Sheetz's medical history in a manner that would allow him to account for relevant work limitations absent a complete hypothetical, and the Commissioner is silent on this issue. Therefore, the ALJ should have stated an adequate hypothetical to the VE and, correspondingly, an adequate RFC that justifies the ALJ's ultimate conclusion that there are jobs in significant numbers in the national economy that Ms. Sheetz can perform.

* * * *

At Step 3 of the sequential analysis, the ALJ found that Ms. Sheetz has moderate limitations[5] in concentrating, persisting, and maintaining pace (commonly referred to as "CPP" in Social Security parlance),[6] and adapting or managing herself.[7] (R. at 29.) The ALJ's hypothetical question to the VE and the RFC adequately accounted for Ms. Sheetz's moderate

---

[5] The areas of mental functioning are based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation. A person has a moderate limitation if his mental "functioning . . . independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c). A moderate limitation is greater than a mild limitation, which means that mental function is "slightly" limited, but less than marked limitation, which means that the mental function is "seriously limited." *Id*.

[6] Concentration, persistence, and pace refer "to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3).

[7] Adapting and managing oneself refer "to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(4).

limitations in CPP, but failed to reflect her moderate limitation in the ability to adapt. The Court will first address CPP.

When assessing mental RFC, state agency psychological consultants use "a form called Mental Residual Functional Capacity Assessment, which has two relevant components: (1) a checkbox-type worksheet for the psychologist to assess the claimant's limitations and (2) a narrative section that contains a written assessment of the claimant's RFC." *Timothy O. v. Kijakazi*, 2023 U.S. Dist. LEXIS 243488, *6 (S.D. Ind. April 21, 2023) (citing Program Operations Manual System DI 25020.0010(B)(1) and *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019). "ALJs must consider—but are not required to adopt—the findings of state-agency psychologists." *Id*. (citing 20 C.F.R. § 404.1513). In evaluating these opinions, "[t]he ALJ must consider whether the consultants' narrative RFC assessment 'adequately encapsulates and translates' the checklist." *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). It's not enough for the ALJ to rely on the narrative RFC recommendations, unless the narrative accounts for all the limitations that an expert has identified "including specific questions raised in check-box of standardized forms." *DeCamp*, 916 F.3d at 676 (7th Cir. 2019); *see also Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) ("It is well-established that 'both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record.' However, an ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination.") (citations omitted)).

Initially and upon review, the two State Agency psychologists, Dr. Johnson and Dr. Gange, reached identical conclusions in Ms. Sheetz's Mental Residual Functional Capacity Assessment. As relevant to this appeal, they found in the check-box portion of the form that Ms.

9

Sheetz has "sustained concentration and persistence limitations" (R. at 85, 104), rating her as moderately limited in her ability "to maintain attention and concentration for extended periods." (*Id.*) They found that she was not significantly limited in other areas, namely her ability to—

- carry out very short and simple, or even detailed, instructions;

- stay on schedule, maintaining regular attendance, and being punctual within customary tolerances;

- sustain an ordinary routine without special supervision;

- work in coordination with or in proximity to others without being distracted by them; and

- make simple work-related decisions; and

- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

(*Id.*)

In the narrative portion of the assessment, both experts explained Ms. Sheetz's "sustained and persistence capacities and /or limitations" as follows:

> The totality of evidence in file suggests that the claimant is able to: understand, carry out and remember simple instructions; able to make judgments commensurate with functions of simple, repetitive tasks; able to respond appropriately to brief supervision and interactions with coworkers and work situations; able to deal with basic changes in a routine work setting.
>
> It appears that claimant would be able to manage occasional contact with the public but sustained, intensive, interpersonal contact would be precluded. The claimant would appear to work best alone, in semi-isolation from others or as part of a small group. Totality of the MER suggests the claimant seems to be able to maintain at least a minimal level of relationship with others.

(R. at 86, 105.)

Contrary to Ms. Sheetz's claim, the experts' narratives reflect and clarify the checkbox findings, offering a more detailed explanation of their functional assessments. For example, the references in the narratives to Ms. Sheetz being able to "understand, carry out and remember simple instructions" and being able "to make judgments commensurate with functions of simple repetitive tasks" directly pertain to the checked CPP limitations.

In turn, having found the experts' opinions to be "mostly persuasive" (R. at 36), the ALJ found that Ms. Sheetz had moderate limitations in CPP and paraphrased the experts' narrative findings into the RFC:

> [Ms. Sheetz can] perform light work . . . except that [she] is further limited to the following: . . . performing simple, routine tasks; making simple, work-related decisions; and occasionally interacting with supervisors, coworkers, or the public.

(R. at 30.)

At first glance, by using such terms as "simple, routine tasks" and "simple, work-related decisions," the RFC may appear to run afoul of the jurisprudence holding that RFC limitations to "simple, routine, repetitive tasks with few workplace changes" do not adequately account for limitations in CPP. *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019). But that is not true here because the ALJ adopted these terms from the experts' narratives, which they used to summarize the checkbox limitations. *See DeCamp v. Berryhill*, 916 F.3d at 676 (7th Cir. 2019) (recognizing that an ALJ may rely on a doctor's narrative explanation insofar as the narrative accounts for the checkbox limitations). In the "Sustained Concentration and Persistence Limitation" section of the MRFC form, the experts checked that Ms. Sheetz was moderately limited in "[t[he ability to maintain attention and concentration for extended periods." (R. at 85, 105.) In the narrative section, they further explained—as it pertains to concentration and

11

persistence[8]—that Ms. Sheetz is able to "understand, carry out and remember simple instructions; [and] able to make judgments commensurate with functions of simple, repetitive tasks." (R. at 86, 106.) The ALJ incorporated the narratives into the RFC, as becomes clear when the experts' narrative findings and the RFC are compared side by side:

| MRFC | RFC |
|---|---|
| Ms. Sheetz is able to: | Ms. Sheetz is able to: |
| Understand, carry out, and remember simple instructions; | Perform simple, routine tasks; |
| make judgments commensurate with functions of simple, repetitive tasks; | make simple, work-related decisions; |
| respond appropriately to brief supervision and interactions with coworkers and work situations; | occasionally interact with supervisors, coworkers, or the public. |

While the wording is not identical, the ALJ's RFC reflects the substance of the experts' findings about concentration and persistence. *See, e.g.*, *Langley v. O'Malley*, No. 22-3008, 2024 WL 3649021, at *4 (7th Cir. Aug. 5, 2024) (no error where "the ALJ only minimally departed from the doctors' opinion" and the "deviation was supported by substantial evidence in the record"). And as noted already, there's no finding that Ms. Sheetz had a limitation concerning the ability to maintain pace. In short, the narrative findings adopted in the RFC sufficiently accommodate Ms. Sheetz's CPP limitations.

That said, the same is not true of the moderate limitation in adapting. One of the checkbox ratings states that Ms. Sheetz has a moderate limitation in her "ability to respond

---

[8] The experts found that Ms. Sheetz's was not significantly limited in her ability "to perform at a consistent pace without an unreasonable number and length of rest periods." (R. at 85.)

12

appropriately to changes in the work setting." (R. at 85, 104.) The rest of the checkboxes indicate that Ms. Sheetz is not significantly limited in other areas related to adaptation:

- being aware of normal hazards and take appropriate precautions;
- traveling in unfamiliar places or use public transportation; and
- setting realistic goals or making plans independently of others.

(*Id*.) In the narrative section of the MRFC, the experts stated that Ms. Sheetz is "able to deal with *basic* changes in a routine work setting." (R. at 86, 106 (emphasis added).) As with the CPP, the ALJ found in his decision that, "as for adapting or managing oneself, [Ms. Sheetz] has experienced a moderate limitation." (R. at 29.) Yet the RFC is completely silent on this issue. Unlike with the CPP limitations, which were incorporated into the RFC and conveyed to the VE, the ALJ failed to include the moderate limitation in adaptation in either the RFC or the hypothetical presented to the VE.

This omission is a reversible error. Once the ALJ found a moderate limitation in adaptation, he had to include it in the hypothetical to the VE. Without doing so, there is no assurance that the VE had a full and accurate understanding of all of Ms. Sheetz's functional limitations. As a result, the VE's testimony regarding available jobs cannot be relied on as substantial evidence. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) ("The ALJ's findings about the jobs [the plaintiff] could perform needed to account in a meaningful way for the earlier findings that recognized her difficulties with concentration, completing tasks, and managing stress."); *Crump*, 932 F.3d at 570 ("[T]he ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). In other words, the Court cannot conclude with confidence that the RFC is supported by substantial

evidence. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (an error is harmless only if the reviewing court can "predict with great confidence what the result of the remand will be"). Given that the Commissioner bears the burden at Step 5, *see Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004), this omission requires a remand.[9]

The ALJ's failure to include Ms. Sheetz's moderate limitation in adapting is particularly significant given the VE's testimony that missing work, arriving late, or leaving early twice per month would be job-prohibitive. After all, a limitation in adapting may affect her ability to regulate emotions or control behavior—including adapting to changes, managing psychologically based symptoms, distinguishing between acceptable and unacceptable work performance, and setting realistic goals. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(4). Such considerations may be relevant here because Ms. Sheetz testified at the hearing that she experiences severe anxiety and PTSD and that she often feels overwhelmed by daily tasks. (R. at 57, 60.) She also said that she has panic attacks and severe anxiety in social situations. (R. at 58.) These deficits could impair her ability to maintain regular attendance and meet workplace expectations for reliability. *See* 20 C.F.R. § 416.945(c) (". . . A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and *in responding appropriately to supervision, coworkers, and work pressures in a work setting*, may reduce your ability to do past work and other work.") (emphasis added)).

---

[9] While in his response brief the Commissioner argued extensively that the RFC incorporated Ms. Sheetz's moderate limitations in CPP, he said nothing about the limitation in adapting or managing oneself, thus waiving this argument. *See April P. v. O'Malley*, 2024 U.S. Dist. LEXIS 157095, *18 (S.D. Ind. Aug. 1, 2024) ("If the Commissioner does not respond to an argument raised by the claimant, it is unclear whether this is a tacit admission by the Commissioner that the ALJ erred or whether it was an oversight. Either way, the Commissioner has waived any response to this argument.") (quotation marks, brackets, and citation omitted).

### D. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: July 10, 2025

                                                /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court